# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00631-CV

**Samuel Campos, Appellant**

**v.**

**Texas Property & Casualty Insurance Guaranty Association for
Reliance National Indemnity Company, an Impaired Carrier, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-04-002133, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## O P I N I O N

We withdraw our prior opinion and judgment in this case and substitute the following opinion and judgment in their place. We overrule appellee's motion for rehearing.

Appellant Samuel Campos was injured on the job. The Texas Workers' Compensation Commission determined that Campos's impairment rating was properly assigned by the designated doctor and that Campos was not entitled to reimbursement of travel expenses for visits to his treating doctor. Campos sought judicial review of the Commission's determination by bringing suit against appellee Texas Property and Casualty Insurance Guaranty Association ("TPCIGA") in Winkler County district court. The Winkler County district court transferred the action to Travis County district court, which subsequently granted TPCIGA's motion for summary judgment on all claims. We conclude that, in accordance with section 410.252(b) of

the Texas Labor Code, the proper venue for Campos's suit is in Winkler County. We reverse the Travis County district court's judgment and remand, with instructions to transfer the case to the 109th District Court in Winkler County.

*Factual and Procedural Background*

This case involves the Texas Property and Casualty Insurance Guaranty Act (the "Guaranty Act").[1] Samuel Campos was injured in an accident at work on November 13, 1999. Reliance National Indemnity Company was the workers' compensation carrier for Campos's employer. In October 2001, Reliance was designated an impaired insurer,[2] triggering the statutory obligation of TPCIGA to pay Reliance's covered claims.[3]

Two disputes arose between Campos and TPCIGA. After Campos's treating doctor assigned a 30% impairment rating, TPCIGA disputed the methodology used by the treating doctor and requested that a designated doctor be assigned. The designated doctor assigned a

---

[1] We apply the Texas Property and Casualty Insurance Guaranty Act in effect in October 2001, when the workers' compensation carrier became an impaired insurer. *See Latter v. Autry*, 853 S.W.2d 836, 836 n.1 (Tex. App.—Austin 1993, no writ) (citing *Durish v. Channelview Bank*, 809 S.W.2d 273, 275-77 (Tex. App.—Austin 1991, writ denied)). However, we will cite to the current sections of the Guaranty Act because the provisions that we cite have not been amended since October 2001 in a manner that would affect our analysis. *See generally* Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 1.20, 1991 Tex. Gen. Laws 252, 264-73, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 685, §§ 9.01-.23, 1993 Tex. Gen. Laws 2559, 2632-38 (codified 2005) (current version at Tex. Ins. Code Ann. ch. 462 (West 2008)).

[2] An insurer is impaired if it is designated as such by the commissioner of insurance and is either placed in receivership or liquidation under a court order based on a finding of insolvency, or placed in conservatorship after the commissioner determines that the insurer is insolvent. Tex. Ins. Code Ann. § 462.004(5) (West 2008).

[3] A "covered claim," in general, is an unpaid claim arising out of a policy that was issued or assumed by an impaired insurer and that is covered by the Guaranty Act, and is within the coverage and applicable limits of the policy. *Id.* § 462.201 (West 2008).

6% impairment rating. Campos disputes the 6% impairment rating. In addition, Campos sought reimbursement for travel expenses incurred during 2002 to visit his treating doctor, whose office in Odessa was approximately 45 miles from Campos's residence in Kermit. TPCIGA refused Campos's request for reimbursement, contending that medical treatment was reasonably available within 20 miles of Campos's residence. A contested case hearing was held on June 12, 2003, before the Texas Workers' Compensation Commission, Hearings Division.[4] The hearing officer determined that the designated doctor's impairment rating of 6% was correct and that Campos was not entitled to the reimbursement of travel expenses. Campos sought review by an appeals panel of the Commission, which affirmed the hearing officer's determinations on November 14, 2003.

Campos filed suit in Winkler County district court on December 22, 2003, seeking judicial review of the Commission's decision on the two disputed issues. TPCIGA filed a motion to transfer venue to Travis County, which the Winkler County district court granted on June 28, 2004. In the Travis County district court, TPCIGA filed a no evidence motion for summary judgment on Campos's entire cause of action, which the district court granted on September 20, 2006.

### *Venue*

On appeal, Campos contends that venue was proper in Winkler County and, therefore, the Winkler County district court erred in transferring venue to Travis County. TPCIGA, in response, contends that venue was proper in Travis County and the transfer of venue should be

---

[4] The Texas Workers' Compensation Commission was abolished effective September 1, 2005, and its functions were assumed by the division of workers' compensation within the Texas Department of Insurance. *See* Tex. Lab. Code Ann. § 402.001 (West 2006).

3

affirmed. Campos relies on the venue provision of the Workers' Compensation Act, and TPCIGA relies on the venue provision of the Texas Property and Casualty Insurance Guaranty Act.

We agree with TPCIGA that the venue provision of the Guaranty Act, if viewed in isolation, would apply to the present lawsuit. The Guaranty Act states, "Venue in a suit by or against the commissioner or association relating to an action or ruling of the commissioner or association under this chapter is in Travis County." Tex. Ins. Code Ann. § 462.017(b) (West 2008).

Campos submits that the plain language of the Guaranty Act's venue provision does not apply here because he challenges a ruling of the Commission, not an "action or ruling" of the commissioner of insurance or TPCIGA. This assertion overlooks the reality that, absent an adverse "action or ruling" by TPCIGA, Campos would not have initiated the Commission's administrative proceedings in the first place. The Guaranty Act's venue provision applies to a suit that *relates to* TPCIGA's action or ruling. It is not limited to a direct appeal of such an action or ruling. Under the Guaranty Act, TPCIGA was obligated to "investigate and adjust, compromise, settle, and pay covered claims to the extent of the association's obligation and *deny all other claims*." *Id.* § 462.301(a) (West 2008) (emphasis added). The Workers' Compensation Act's administrative proceedings take place in order to settle disputes between the parties. *See* Tex. Lab. Code Ann. § 410.021 (West 2006) (purpose of benefit review conference is to resolve disputed issues by agreement of the parties), § 410.025(b) (West 2006) (contested case hearing scheduled if disputed issues not resolved at benefit review conference). Therefore, Campos's suit relates to an action or ruling of TPCIGA under the Guaranty Act.

4

However, we also agree with Campos that the Workers' Compensation Act's venue provision for judicial review of an appeals panel decision, if viewed in isolation, would apply to the present lawsuit. The Workers' Compensation Act states:

> The party bringing suit to appeal the decision must file a petition with the appropriate court in: (1) the county where the employee resided at the time of the injury or death, if the employee is deceased; or (2) in the case of an occupational disease, in the county where the employee resided on the date disability began or any county agreed to by the parties.

*Id.* § 410.252(b) (West 2006).

TPCIGA submits that section 410.252(b) does not apply here because TPCIGA is not an "insurance carrier." TPCIGA points out that it is not, in general, considered to "stand in the place of an impaired insurer," Tex. Ins. Code Ann. § 462.102 (West 2008), and chapter 410 of the labor code governs the proceedings—administrative and judicial—that "determine the liability of an *insurance carrier* for compensation for an injury or death" under the Workers' Compensation Act, Tex. Lab. Code Ann. § 410.002 (West 2006) (emphasis added). However, we need not determine whether TPCIGA is or is not an "insurance carrier" so as to subject TPCIGA to chapter 410, because the Guaranty Act independently subjects TPCIGA to chapter 410. The Guaranty Act requires that TPCIGA pay "the full amount" of a claim arising out of an impaired insurer's workers' compensation insurance policy, but only if the claim is a covered claim. *See* Tex. Ins. Code Ann. § 462.213(b) (West 2008). The administrative review procedures of chapter 410 of the Workers' Compensation Act—benefit review conference, contested case hearing, and appeals panel—are mandatory for a workers' compensation claimant to challenge a denial of benefits in court. *See* Tex. Lab. Code Ann. § 410.251 (West 2006). Therefore, these administrative

5

review procedures are necessary, in case of a dispute, to determine whether a claim is a covered claim. Indeed, TPCIGA admits that it is subject to these administrative review procedures. TPCIGA does not explain, however, why its obligation under the Guaranty Act to pay a covered claim would subject TPCIGA to the Workers' Compensation Act's administrative review provisions in order to determine the claimant's entitlement to, and the amount of benefits, but not the judicial review provisions, which have the same purpose. We find that the Guaranty Act, by requiring TPCIGA to pay only *covered* claims, subjects TPCIGA to those provisions of chapter 410 applicable to the determination of whether a claimant is entitled to benefits under the Workers' Compensation Act.

We have potentially conflicting statutes governing venue in this case. Under the Guaranty Act's venue provision, mandatory venue for Campos's suit is in Travis County. *See* Tex. Ins. Code Ann. § 462.017(b). Under the Workers' Compensation Act's venue provision, on the other hand, mandatory venue is in Winkler County, the county of Campos's residence at the time of his injury. *See* Tex. Lab. Code Ann. § 410.252(b).

In order to resolve which statute controls, we first look to the applicable provisions of the Guaranty Act's conflict-of-law section:

(a) Except as provided by Subsection (b), if this chapter conflicts with another statute relating to the association, this chapter controls.

(b) This section does not apply to a conflict between this chapter and:

(1) Subtitle A, Title 5, Labor Code . . . .

Tex. Ins. Code Ann. § 462.010 (West 2008). The Workers' Compensation Act is codified at title 5, subtitle A of the labor code. Section 462.010 of the Guaranty Act expressly excepts

6

the Workers' Compensation Act from the general rule that the Guaranty Act controls in the event of a conflict with another statute. Therefore, we cannot conclude that the Guaranty Act prevails in every conflict with the Workers' Compensation Act. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995) (courts should avoid statutory construction that renders any part of the statutory language meaningless).

However, the Guaranty Act's conflict-of-law section also does not state that the Workers' Compensation Act prevails in every conflict with the Guaranty Act. In light of this, TPCIGA contends that we must apply rules of statutory construction to determine which venue provision controls. For purposes of our review, we need not determine whether section 462.010 should be construed such that the Workers' Compensation Act does prevail in all conflicts with the Guaranty Act,[5] because we conclude that even under rules of statutory construction, the Workers' Compensation Act's venue provision prevails over the Guaranty Act's venue provision. In the case of an irreconcilable conflict between a general statutory provision and a specific statutory provision, the specific provision controls over the general provision. *See* Tex. Gov't Code Ann. § 311.026 (West 2005).[6] Section 410.252 of the Workers' Compensation Act is applicable only to

---

[5] We note that this Court has made this observation in an unpublished opinion. *See Texas Prop. & Cas. Ins. Guar. Ass'n v. Texas Workers' Compensation Comm'n*, No. 03-00-00467-CV, 2001 Tex. App. LEXIS 1246, at *7 (Tex. App.—Austin Feb. 28, 2001, pet. denied) (mem. op.) ("Further, if a conflict exists between the Guaranty Act and the Texas Workers' Compensation Act, the Workers' Compensation Act controls.").

[6] A general provision will control over a specific provision if the general provision is the later enactment and the "manifest intent" is that it prevail over the specific provision. *See* Tex. Gov't Code Ann. § 311.026(b) (West 2005). While section 462.017(b) of the Guaranty Act is the later enactment, TPCIGA has not identified anything in the Guaranty Act or its legislative history that would show a manifest intent that it control over section 410.252 of the Workers' Compensation Act.

workers' compensation claim disputes. *See* Tex. Lab. Code Ann. § 410.251. If the Guaranty Act had a specific venue provision for disputes over covered claims, we might be faced with a more problematic question. However, section 462.017 of the Guaranty Act applies to *any* suit by or against the commissioner or TPCIGA, relating to *any* action or ruling of the commissioner or TPCIGA made under the Guaranty Act. Tex. Ins. Code Ann. § 462.017; *see also id.* § 462.101(a)(3) (West 2008) (TPCIGA may "sue or be sued"). In our view, the specific venue provision of the Workers' Compensation Act controls over the general venue provision of the Guaranty Act.[7]

TPCIGA contends that such a conclusion would be contrary to *Durish v. Newberry*, 800 S.W.2d 610 (Tex. App.—Houston [14th Dist.] 1990, writ dism'd by agr.), in which the court of appeals held that the venue provision of the Workers' Compensation Act did not control over the mandatory venue provision of an insurance code chapter that governed insurance companies in receivership. However, none of the court's three reasons for its holding in *Durish* is applicable here. First, the court in *Durish* determined that the phrase "shall have exclusive venue" in the insurance code's venue provision "could not be clearer" in expressing the legislative intent for that venue provision to be controlling. 800 S.W.2d at 611. The Guaranty Act does not contain such language. *See* Tex. Ins. Code Ann. § 462.017(b). Second, in *Durish*, the insurance code chapter at issue stated, without exception, that "[i]n the event of conflict between the provisions of this Article and

---

[7] According to TPCIGA, the Workers' Compensation Act's venue provision is the general provision because it applies to all workers' compensation claimants, whereas the Guaranty Act's venue provision applies to such claimants only when there is an impaired insurer, in which case TPCIGA is responsible for the impaired insurer's policy obligations. However, in following this argument, we cannot imagine a circumstance in which a Workers' Compensation Act provision would prevail in the event of a conflict with the Guaranty Act. This would effectively write the Workers' Compensation Act exception out of the Guaranty Act's conflict-of-law section. We reject an interpretation that renders statutory language meaningless.

8

the provisions of any existing law, the provisions of this Article shall prevail." Act of May 16, 1955, 54th Leg., R.S., ch. 267, § 1, art. 21.28, sec. 16, 1955 Tex. Gen. Laws 737, 747, *repealed by* Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 9, 2005 Tex. Gen. Laws 3307, 3362. The Guaranty Act's conflict-of-law provision contains a specific exception for the Workers' Compensation Act. *See* Tex. Ins. Code Ann. § 462.010(b)(1). Third, the court in *Durish* noted that, in connection with the insurer's receivership, the Travis County district court had issued a permanent injunction enjoining any further claims against the insurer except in the proceedings before it, and the claimant had not challenged the injunction. *See Durish*, 800 S.W.2d at 612. There is no injunction in the case before us. Therefore, we are of the opinion that *Durish* does not alter our analysis here.[8]

TPCIGA also argues that Campos waived any objection to the trial court's venue determination by not seeking mandamus relief. Under section 15.0642 of the civil practice and remedies code, "[a] party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 15.0642 (West 2002). Chapter 15 of the civil practice and remedies code includes a mandatory venue

---

[8] TPCIGA argues that *Durish v. Newberry* reflects the Guaranty Act's policy concern that TPCIGA's resources not be depleted by being required to litigate suits in the county of each claimant's residence. The Guaranty Act includes among its purposes to "avoid financial loss to claimants or policyholders because of an insurer's impairment." Tex. Ins. Code Ann. § 462.002 (West 2008). It may be the case that requiring TPCIGA to litigate outside Travis County could reduce the funds held by TPCIGA that would otherwise be available to claimants. However, requiring venue to be in the claimant's county of residence could cause depletion of TPCIGA's resources to the same extent that requiring venue to be in Travis County could cause financial loss to claimants. Moreover, contrary to TPCIGA's alleged policy against travel expenses, TPCIGA admits that the benefit review conferences and contested case hearings in which TPCIGA participates are generally held, in accordance with the Workers' Compensation Act, within 75 miles of the claimant's residence at the time of the injury. *See* Tex. Lab. Code Ann. § 410.005(a) (West 2006).

provision for "[a]n action governed by any other statute prescribing mandatory venue." *Id.* § 15.016 (West 2002). Labor code section 410.252 prescribes mandatory venue. *See* Tex. Lab. Code Ann. § 410.252(b). Thus, a party may apply for a writ of mandamus to enforce section 410.252(b).

According to TPCIGA, when the legislature has made mandamus relief available, a party should not be allowed to await the outcome of a trial, and then in the event of an unfavorable judgment, base an appeal on "an alleged error that could easily have been addressed prior to trial." This would amount to a rule that where mandamus relief is potentially available, it becomes the exclusive means of seeking appellate review. TPCIGA has not directed us to any authority for its position that mandamus is the only avenue to enforce a mandatory venue provision such as those at issue here. Section 15.0642, by its plain terms, does not impose such a limitation: "A party *may* apply for a writ of mandamus . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 15.0642 (emphasis added). Mandamus and ordinary appeal are different appellate remedies with a variety of different requirements and substantially different forms of available relief. They can apply to different situations and are not mutually exclusive. We place particular emphasis on *In re Missouri Pacific Railroad Co.*, 998 S.W.2d 212 (Tex. 1999), in which the Texas Supreme Court concluded that a party seeking mandamus review under section 15.0642 did not need to establish the inadequacy of appellate review. Central to the supreme court's conclusion was its recognition that venue decisions are correctable by appeal (and, therefore, to require a showing of inadequate remedy by appeal would make section 15.0642 a "useless act"). *See* 998 S.W.2d at 216. We decline to

hold that mandamus was Campos's exclusive remedy to enforce the Workers' Compensation Act's venue provision.[9]

### *Conclusion*

We conclude that, in accordance with section 410.252(b) of the Texas Labor Code, mandatory venue for Campos's suit is in Winkler County.[10] The Winkler County district court's transfer of venue to Travis County was reversible error. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 2002). We reverse and vacate the summary judgment and remand, with instructions that the Travis County district court transfer the case to the 109th District Court in Winkler County.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson;
    Chief Justice Law Not Participating

Reversed and Remanded on Motion for Rehearing

Filed: March 26, 2009

---

[9] Courts have concluded that mandamus is not an exclusive remedy when faced with the same question in a different context, including the wrongful denial of discovery, *see Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex. 1990) ("The decision not to pursue the extraordinary remedy of mandamus does not prejudice or waive a party's right to complain on appeal."), and mandatory venue for a suit affecting the parent-child relationship, *see In re S.G.S.*, No. 02-05-211-CV, 2006 Tex. App. LEXIS 5730, at *3-4 (Tex. App.—Fort Worth June 29, 2006, pet. denied) (mem. op.) (Texas Supreme Court's holding that mandamus relief was available because appellate review was inadequate, did not make remedy by appeal—however inadequate—unavailable).

[10] Accordingly, we do not reach Campos's additional point on appeal that the Travis County district court erred in granting TPCIGA's no evidence motion for summary judgment.

11